UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Judy Rogers and Charles Johnson,

    Plaintiffs,

v.

RBC Mortgage Co. f/k/a Prism Mortgage
Co, Chase Home Finance, LLC, Mortgage
Electronic Registration Systems, Inc.,
Fannie Mae, IBM Lender Business
Process Services, and Orlans Associates,
P.C.,

    Defendants.
_____/

Case No. 11-11167

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND [21] AND
GRANTING DEFENDANT ORLANS'S MOTION TO DISMISS [14]**

Plaintiffs Judy Rogers and Charles Johnson filed a complaint in state court against Defendants Chase Home Finance, LLC, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae, IBM Lender Business Process Service (Lender), and RBC Mortgage Co., f/k/a Prism Mortgage Co. Plaintiffs alleged various violations of state and federal law based upon those defendants' attempt to foreclose on Plaintiffs' mortgage. Chase removed the case to this Court on the basis of diversity and federal question jurisdiction. Plaintiffs then filed a first amended complaint, adding Defendant Orlans Associates, P.C.

Now before the Court is Plaintiffs' motion to remand and Orlans's motion to dismiss. Because the Court finds that it has jurisdiction over Plaintiffs' federal claims based upon federal question jurisdiction and has supplemental jurisdiction over Plaintiffs' state claims, the Court DENIES Plaintiffs' motion to remand. Because the Court finds that Plaintiffs have

not pleaded actionable claims under the Fair Debt Collection Practices Act or what Plaintiffs have titled "Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents," the Court GRANTS Orlans's motion to dismiss.

## I. Facts

The facts necessary to resolve these two motions are straightforward: Plaintiffs executed a mortgage on their home and later failed to pay the mortgage; then they allegedly requested information from the various defendants, questioning the mortgage's chain of title; they allege that they did not timely receive the information they requested; Orlans then sent a notice that foreclosure proceedings would begin; and after that, Plaintiffs filed suit to stop the foreclosure and keep their home.

Plaintiffs reside at and co-own a condo at 4273 Elden Place, Waterford, Michigan 48329. (Am. Compl., Ex. A, Rogers Aff. ¶ 1.) On April 7, 2004, Plaintiffs refinanced the mortgage on the condo for $166,000.00 with RBC. (*Id.* ¶2.) (Orlans's Mot. to Dismiss, Ex. 2, Mortgage.) The mortgage was later assigned to MERS. (Rogers Aff. ¶ 5.) On November 1, 2004, RBC transferred Plaintiffs' account to Chase. (*Id.* ¶ 7.)

On July 1, 2010, Chase transferred the servicing of the mortgage to Lender. (*Id.* ¶ 8) At that time, Plaintiffs allege that they were not only current on their mortgage payments, but that they were also two payments ahead of schedule. (*Id.*) They state therefore that they did not owe a mortgage payment until September 1, 2010. (*Id.*)

Sometime later, Lender asked Plaintiffs to complete an IRS W-9 form. (*Id.* ¶ 9.) Plaintiff Rogers thought that this request was unusual. (*Id.*) She states that she noticed, in the request letter, that Lender identified itself as a loan servicer, and at the bottom of the letter, Lender stated that it was a debt collector. (*Id.*)

2

On July 11, 2010, Plaintiff Rogers states that she sent Lender "a written request for evidence of authorization and assignment." (*Id.* ¶ 10.)

On July 26, 2010, Plaintiff Rogers states that she received Lender's response, in which it stated that "[y]ou need to fill out and return the [] W-9 [form] to the correspondence address." (*Id.* ¶ 11.)

Plaintiff Rogers then states that she sent a series of Qualified Written Requests (QWRs) and letters to Lender, requesting "evidence, stipulation, validation and the name of the Trust (securitized)." (*Id.* ¶12.) She alleges that she used multiple formats and statements in her QWRs and requests. (*Id.*) And she alleges that she mailed the letter by certified mail, return receipt requested, on the following dates: July 11, August 1, September 8, October 16, October 25, November 7, November 15, and January 17, 2011. (*Id.*)

Plaintiff Rogers also states that she sent QWRs and requests for evidence to Chase, again, by certified mail and return receipt requested, on June 24, July 13, and August 14, 2010. (*Id.* ¶ 13.)

But Plaintiffs allege that they did not receive "confirmation or stipulation or evidence." (*Id.* ¶ 15.) They state that, since "Chase [was] out of the picture, [they] stopped paying the First Mortgage, but continued to pay [their] Fifth Third Bank Home Equity Line of Credit." (*Id.*)

Plaintiff Rogers states that Lender eventually responded with a letter titled "Receipt of Inquiry." (*Id.* ¶ 16.) Plaintiff Rogers alleges that this form letter did not identify or reference that Lender received a QWR or request. Plaintiff then states that she never received any of the information she requested. (*Id.*)

3

On August 1, 2010, after writing to three credit bureaus, Plaintiff Rogers indicates that an additional mortgage account, dated 2004, appeared on her credit report. (*Id.* ¶19.) She alleges that this mortgage was not on her previous October 4, 2009 report. (*Id.*) She states that she "continued correspondence with the credit bureaus, asking for an investigation and disputing the duplicate items." (*Id.*) The correspondence with the credit bureaus, Plaintiff relates, resulted in the bureaus placing a fraud alert on Plaintiffs' accounts. (*Id.*)

Eventually, Plaintiff acknowledges that she received various documents from Chase and Lender. (*Id.* ¶20.)

Plaintiff Rogers states: "I am informed and believe the assignments propounded are defective or fraudulent thus no chain of title exists and no transfer of interests occurred. When the loan was assigned or sold to each entity, there were no Assignments of the Mortgage to any entity at the time of the sale. Therefore, "True Sales" or transfer could not occur since the mortgage and note were separated." (*Id.* ¶ 30) (emphasis removed.)

Plaintiffs also allege that the notice of the sheriff's sale that was to take place on March 15, 2010, was not posted on their door until February 21, 2010. (*Id.* ¶ 32.)

On March 13, 2011, Plaintiffs filed suit against Defendants RBC, Chase, MERS, Fannie Mae, and IBM in Michigan state court. Against those defendants, Plaintiffs asserted seven causes of action:

- 1. Violation of Michigan statutes:
    - the Michigan Foreclosure by Advertisement statute: Michigan Compiled Laws 600.3201 *et seq.*;

4

- Michigan Mortgage Lending Practices statute: Michigan Compiled Laws 445.1601-1613;
- Michigan Consumer Mortgage Protection Act: Michigan Compiled Laws 445.1631-1644;
- Michigan Credit Reform Act: Michigan Compiled Laws 446.1851-1863;
- Michigan's Consumer Finance Services Act: Michigan Compiled Laws 487.2051-2072;
- 2. Quiet title: Michigan Compiled Law 600.2932, unclean hands, and declaratory judgment;
- 3. Claim and delivery;
- 4. Injunctive relief and request for temporary restraining order;
- 5. Violation of the Fair Debt Collection Practices Act: 15 U.S.C. § 1692 *et seq.*;
- 6. Violation of Real Estate Settlement and Procedures Act and Dodd-Frank Amendments: 12 U.S.C. § 2601, *et seq.*; and
- 7. Intentional or negligent infliction of emotional distress.

On March 22, 2011, Chase removed the case to this Court. (Dkt. 1.) Chase removed on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiffs alleged violations of the FDCPA and RESPA, federal statutes. (Dkt. 1, Notice of Removal, ¶ 6.) Chase states that the Court has supplemental jurisdiction over Plaintiffs' remaining state-based claims pursuant to 28 U.S.C. § 1367. (*Id.*) At the time of removal, Chase also alleged that the Court has jurisdiction based upon the parties' complete diversity. (*Id.* ¶ 7.)

5

Three days later, on March 25, 2011, Plaintiffs filed an amended complaint adding Orlans as a defendant and asserting two claims against it: violation of the FDCPA and "Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents]."

Plaintiffs state that Orlans is a law firm that "specializes in foreclosure actions and related creditor representation." (Am. Compl. at 5.) Plaintiffs also state that Orlans has members of its staff that are MERS employees and members of its staff that are Lender employees. (*Id.*)

In Count V, Violation of the Fair Debt Collective Practices Act, Plaintiffs allege that "Defendants[] individually and/or collectively were debt collectors. Their documentation so indicates." (Am. Compl. ¶ 118.) Plaintiffs also state that Defendants are "debt buyers" as defined by the FDCPA. (*Id.* ¶ 121.) Plaintiffs maintain therefore that the FDCPA regulates Defendants' conduct. (*Id.* ¶ 118.)

Plaintiffs allege that Defendants violated the FDCPA by:

- threatening foreclosure;
- taking steps towards foreclosing the property;
- using fraudulent techniques and procedures to collect their debts "as they failed to prove any right to collect that debt after being challenged and may have fraudulently asserted an interest in the mortgage and/or note in an unfair practice to collect the debt;"
- alleging loan balances that were intentionally or negligently incorrect and failing to justify their bases for the loan balances upon Plaintiffs' requests;

- intentionally refusing to demonstrate that they were entitled to collect the debt and that they were the owner of the mortgage and note, even after Plaintiffs made the requests;

- making false or material misrepresentations, or implications and engaging in oppressive conduct, and unfair practices, in an attempt to collect a debt."

(*Id.* ¶¶ 119-124.)

Against Orlans, Plaintiffs state that it is a debt collector as defined by 15 U.S.C. § 1692a(6). (*Id.* ¶ 125.) Plaintiffs state that Orlans is "vicariously liable for the misdeeds of their clients" as well as "liable for [its] own misconduct when [it] failed to conduct due diligence in reviewing the file." (*Id.* ¶¶ 126, 127.) Plaintiffs argue that "Orlans is strictly liable without regardless [sic] intent or actual knowledge or willfulness or knowledge of the clients [sic] errors and misdeeds." (*Id.* ¶ 128.)

In Count VIII, Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents], Plaintiffs allege that all the defendants, including Orlans,

> intentionally [] produced and filed documents with the registrar of deeds contrary to the [statutes listed in the complaint], and each of them, as part of their business practices, knowingly procured or offered improperly prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the Michigan Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in Michigan or intended to use the same to foreclose on Plaintiffs [sic] home.

(*Id.* ¶ 153.) Defendants' business practices, Plaintiffs allege, "were unlawful, deceptive, misleading and fraudulent and violate[d] Federal law "as alleged [in the complaint] as well as the unfair and deceptive acts and practices statute of Michigan."  (*Id.* ¶ 154.)

7

**III.    Analysis**

    **A. The Court has jurisdiction over Plaintiffs' claims**

        **1.  The Court has original jurisdiction over Plaintiffs' federal law claims**

Plaintiffs argue that the Court does not have jurisdiction over their claims because Orlans destroys the diversity in the suit–upon which Defendant Chase relied to remove the case. Defendant Chase argues that Plaintiffs filed the amended complaint and added Orlans to destroy diversity jurisdiction. Neither of these arguments matters. As Defendant Chase and the other defendants who joined Chase's response point out, the Court has federal question jurisdiction because Plaintiffs have alleged violations of federal statutes on the face of their complaint. The Court has supplemental jurisdiction over the remaining claims because the facts related to those claims are the same facts related to the federal claims–facts related to the execution, transfer, default upon, and enforcement of Plaintiffs' mortgage.

At the time of removal, a defendant bears the burden to show that federal jurisdiction exists. *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1063 (6th Cir. 2008). "It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999) (citing 28 U.S.C.§ 1441(a)). "To remove a case as one falling within federal-question jurisdiction, the federal question must appear on the face of a properly pleaded complaint[.]" *Id.* "The language of [§ 1441(a)] obviously permits the removal of a case that contains only claims that 'arise under' federal law. That is because a federal statute explicitly grants the federal courts 'original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States.'" *Wisconsin Dept. of Corr. v. Schacht*, 542 U.S. 381, 386 (1998) (citing 28 U.S.C. § 1331).

Here, Defendants have met their burden. They have shown, in their notice of removal, that Plaintiffs have sued under two federal statutes, the FDCPA and RESPA. (See Compl., Counts V, VI.) Plaintiffs therefore have "subjected [themselves] to the possibility that [Defendants] would remove the case to the federal courts." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997). The Court therefore has original jurisdiction over Plaintiffs' federal claim.

### 2. The Court has supplemental jurisdiction over Plaintiffs' state law claims

The Court also has jurisdiction over Plaintiffs' state law claims. The supplemental jurisdiction statute "provides, 'in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Untied States Constitution.'" *Int'l Coll.*, 522 U.S. at 164-65 (citing 28 U.S.C. § 1367). "Th[is] provision applies with equal force to cases removed to federal court as to cases initially field there; a removed case is necessarily one "of which the district courts . . . have original jurisdiction." *Id.* (citations omitted).

The supplemental jurisdiction "case or controversy" requirement is met "when [the] state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Farmers Inc. Co. of Columbus, Inc.*, 10-3023, 2011 WL 1885981, at *3 (6th Cir. May 19, 2011) (citations omitted).

Here, all of Plaintiffs' state claims–violations of various Michigan foreclosure laws, quiet title, intentional or negligent infliction of emotional distress, etc.–are related to the same set of facts: the execution, transfer, alleged default, and enforcement of Plaintiffs' mortgage on their property. The Court therefore has supplemental jurisdiction over Plaintiffs' state law claims as well.

### B. Defendant Orlans's motion to dismiss

Orlans moves the Court to dismiss Plaintiffs' causes of action against it, thereby dismissing Orlans from this case. (Orlans's Mot. to Dismiss; Pls.' Resp.) Orlans argues that Plaintiffs have not sufficiently pleaded that it is debt collector, as required by the FDCPA. Orlans also argues that Plaintiffs' allegations under their Unfair and Deceptive Business Act and Practices claims are wholly conclusory and do not contain any factual allegations–therefore failing to state a claim and requiring dismissal. Orlans alternatively has moved for summary judgment on these claims.

#### 1. Rule 12(b)(6) standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d

545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing and ruling upon a motion to dismiss, a court may look to documents that are "not formally incorporated by reference or attached to a complaint," if the "document is referred to in the complaint and central to the plaintiff's claims." *Greenberg v. Life Ins.*

11

*Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted). A court's consideration of these documents does not convert the motion to dismiss into a motion for summary judgment. *Id.* (citation omitted).

### 2. Plaintiffs have not sufficiently pleaded that Orlans is a debt collector

The Court must first determine whether Orlans is a debt collector. If Orlans is not a debt collector, then Plaintiffs' FDCPA claims against it fail. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (stating, "[a]s a matter of law, liability under . . . [§]1692e can only attach to those who meet the statutory definition of a 'debt collector.'") Plaintiffs bear the burden to establish by proof that Orlans is a debt collector. *Golliday v. Chase Home Fin.,LLC*, 761 F.Supp.2d 629, 635 (W.D.Mich. 2011) (Bell, J.) (quotation marks and citations omitted).

The FDCPA defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.]

15 U.S.C. § 1692a(6). To determine whether a defendant is a debt collector, the Court must "look beyond the facts of the particular case to determine whether a defendant's 'principal purpose' is to collect debts or whether the defendant regularly engages in collecting debts." *Golliday*, 761 F.Supp.2d at 635 (quotation marks and citations omitted). The Court must not focus on "the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendants regular activities." *Id.* (quotation marks and citations omitted). "Whether a party regularly attempts to collect debts is determined by the volume or frequency of its debt collection activities." *Id.*

Plaintiffs argue that Orlans is a debt collector. In their complaint, as to Orlans, Plaintiffs state that Orlans is a "law firm [that] specializes in foreclosure actions and related creditor representation." (Am. Compl. ¶ 25.) Plaintiffs summarily allege that Orlans is a debt collector. (*Id.* ¶ 125.) Plaintiffs then state that "Orlans is vicariously liable for the misdeeds of their clients." (*Id.* ¶ 126.) They then allege that "Orlans is liable for [its] own misconduct when [it] failed to conduct due diligence in reviewing [Plaintiffs'] file." (*Id.* ¶ 127.) Plaintiffs argue that Orlans is strictly liable, regardless of intent or actual knowledge or willfulness. (*Id.* ¶128.)

They support their argument with several letters that reference debt collecting and a phone message system recording.

On January 18, 2011, Orlans sent a letter to Plaintiff Johnson. (Orlans' Mot. to Dismiss, Ex. 3, January 18, 2011 Letter.) At the top of the letter reads:

> Federal law requires us to advise you that communication with our office could be interpreted as an attempt to collect a debt and that any information obtained will be used for that purpose.

(*Id.*) In the letter, Orlans states that it represents Lender, "which is the creditor to whom your mortgage debt is owed or the servicing agent for the creditor to whom the debt is owed." (*Id.*) The letter then states that "[t]he creditor has referred this matter to this office with instructions to start proceedings to foreclose the mortgage[.]" (*Id.*) The letter states that Plaintiffs have defaulted on the loan and summarizes that they have missed four monthly payments of $955.59, for a total of $3,822.36. (*Id.*) Late charges totaled $143.34. (*Id.*) The letter then identifies Orlans as the designate agent and the entity that Plaintiffs should contact to schedule any meeting. (*Id.*)

Plaintiffs allege in their response brief that, when they called Orlans, the answering machine had the following message:

> Thank you for calling Orlans. Please be advised that this office is a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

(Pls.' Resp. at 9-10.)

On February 15, 2001, Plaintiffs state that Orlans sent them another letter that shows that Orlans is a debt collector. (Pls.' Resp. Ex, 4, February 15, 2011 Letter.) At the top of this letter reads the same statement that is found at the top of the January 18 letter.

Plaintiffs have not met their burden to plead in their complaint or with their offered documents to show that Orlans is a debt collector. Plaintiffs' argument fails for two reasons. First, the Sixth Circuit has held that an entity that forecloses on a security interest is not a debt collector. See *Montgomery*, 346 F.3d at 700-01 (quoting and concluding, "an enforcer of a security interest . . . falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6).") (citation omitted); see also *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (citing *Montgomery* with approval and holding, "the plain language of the FDCPA supports . . . the conclusion that foreclosing on a security interest is not debt collection activity for purposes of [certain FDCPA provisions]," and "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f."[1] (second alteration in original, citations omitted)).

---

[1] Here, this section is not at issue.

Because enforcing a security interest such as a mortgage does not make Orlans a debt collector, Plaintiffs' argument fails.

Their argument also fails because the letters and the unverified phone message do not establish that Orlans's principal purpose is debt collection. Courts in this circuit have held similarly.

In *Golliday*, the court discussed the effect of a disclaimer at the top of the letter, such as the one at issue in this case. There, the letter stated: "This firm is a debt collector attempting to collect a debt. Any information we obtain will be used for that purpose." *Golliday*, 761 F.Supp.2d at 636. The court surveyed other cases involving such letterhead disclaimers and found that "[c]ourts . . . have rejected the proposition that a law firm is transformed into a debt collector when its [letterhead] contains such a disclaimer." *Id*. The reason a letterhead disclaimer was there, the court stated, was that in limited circumstances for limited provisions of the FDCPA (for 15 U.S.C. § 1692f(6)), a law firm may be a debt collector. (*Id.*) The letterhead therefore was there to err on the side of caution. The court stated that the firm should not be faulted for erring so. The court held that the law firm "was admittedly representing a client in nonjudicial foreclosure proceedings and therefore was well advised to include [the disclaimer]." (*Id.*) But that disclaimer, "without more, did not transform the firm into a debt collector for all purposes . . . [and] is insufficient to raise a triable issue of fact on the question of the firm's status as a debt collector." (*Id.*)

Courts in this district have also already decided whether Orlans is a debt collector in an FDCPA context. See *Chilenko v. Amer. Home. Mortg. Serv., Inc.*, 09-12247, 2011 WL 837025 (E.D.Mich. Mar. 7, 2011) (Roberts, J.) (adopting *Chilenko*, 09-12247, 2011WL

2050329, at *2 (E.D.Mich. Feb. 15, 2011) (Whalen, Mag. J.) (granting Orlans's motion for summary judgment on the basis that it was not a debt collector, and holding that "[Orlans's] attempts to enforce its client's security interests, with nothing more, is insufficient to show that it was a 'debt collector' under the FDCPA."). See also *Matthews v. Mortg. Elec. Registration Sys., Inc.*, 10-13740, 2011 WL 2560329, at *7 (E.D.Mich. Apr. 5, 2011) (Randon, Mag. J.) (surveying case law and holding that Orlans was not a debt collector).

This case does not differ from the other courts that found that Orlans was not a debt collector. And Plaintiffs' have not distinguished this case from those cases. Plaintiffs allege that those other cases "were decided wrongly" because the courts did not rely on *Heintz v. Jenkins*, 514 U.S. 219 (1995), *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010), and *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002).[2]

While it is true that a lawyer or law firm can be a debt collector, Plaintiffs have not shown that Orlans is one. Plaintiffs rely on *Heintz v. Jenkins*, 514 U.S. 219 (1995) to support their argument that a Orlans is a debt collector as defined by the FDCPA. In *Heintz*, the Court held that a lawyer, who "'regularly,' *through litigation*, tries to collect consumer debts," was a debt collector. 514 U.S. at 292. There, the plaintiff borrowed money from a bank to purchase a car. *Id.* at 293. The plaintiff later defaulted on the loan. *Id.* The bank's law firm then sued the plaintiff to recover the balance owing on the car. *Id.*

---

[2] The *Jerman* case, although it involved a law firm, does not apply here. That case discussed the FDCPA's bona fide error defense's scope. *Jerman*, 130 S.Ct. at 1610-11. Here, the bona fide error defense is not at play. *Dickerson,* likewise, does not apply. There, the district court held that the law firm was a debt collector, because it "regularly engaged in efforts to collect the debts of others." *Dickerson*, 307 F.3d at 631. Here, the Court has held that Orlans is not a debt collector. Plaintiffs' cases are therefore not useful to their cause.

The bank included in the amount due under the loan agreement an amount not anticipated in the agreement. *Id.* The district court that addressed that case dismissed it, holding that the FDCPA did not apply to lawyers engaging in debt collection. *Id.* at 294. The Supreme Court ultimately disagreed. *Id.* The Court stated two reasons for its holding that the FDCPA applies to "the litigating activities of lawyers[:]" first, "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts[;]" second the Court held that Congress "intended that lawyers be subject to the [FDCPA] whenever they meet the general 'debt collector' definition." *Id.* (citation omitted).

But again, here, Orlans did not try to collect on a debt, it informed Plaintiffs that it was going to proceed with foreclosure to enforce the security interest. The letters and voicemail message, standing alone, are not sufficient to transform Orlans into a debt collector.

The Court therefore holds that Orlans is not a debt collector and dismisses this claim. Because Orlans is not debt collector, Plaintiffs cannot sustain a cause of action based upon violations of the FDCPA and the Court need not further entertain Plaintiffs' FDCPA claim.

### 3. Plaintiffs have not sufficiently pleaded a violation of unfair and deceptive business acts and practices

Plaintiffs titled a count against all defendants: Unfair and Deceptive Business Acts and Practices and [False &/Or Fraudulently Procured Documents]. (Am. Compl. at 26.) Plaintiffs state:

> Defendants intentionally have produced and filed documents with the registrar of deeds contrary to the above specified statutes, and each of [the defendants], as part of their business practices, knowingly procured or offered improperly prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the Michigan Codes and Regulations related to non-judicial foreclosure and allowed these

> documents to be filed, registered, or recorded in Michigan or intended to use same to foreclose on Plaintiffs['] home. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practice.
>
> The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate Federal law as alleged herein above as well as the unfair and deceptive acts and practices statute of Michigan. Further, the above specified Defendants, and each of them, knew, or should have known, that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.
>
> Unfair business practices include any unlawful, unfair, misleading or fraudulent business practice.

(Am. Compl. ¶¶ 153-55.) Orlans has moved to dismiss this claim. It argues that these statements are wholly conclusory and do not state any factual allegations. (Orlans's Mot. to Dimiss at 8.) It also argues that Plaintiffs do not state what statutes Orlans have allegedly violated. (*Id.*)

Plaintiffs' response does nothing to clarify its "Unfair and Deceptive Business Act" claim. In the section Plaintiffs devoted to this claim, Plaintiffs argue that Orlans sued Plaintiffs on MERS's behalf, and that Orlans should not have. (Pls.' Resp. to Orlans's Mot. to Dismiss at 20.) Plaintiffs then state that "[i]nitiating the foreclosure process in the name of MERS is a nullity and a slander on the Plaintiffs [sic] title." (*Id.*) Plaintiffs conclude the MERS argument by stating that "Orlans made a significant error of law, either recklessly, intentionally or negligently by filing on behalf of MERS." (*Id.*)

Plaintiffs also argue that Orlans and the other Defendants "created, procured, offered, filed or otherwise used improper documents in an attempt to create a chain of title." (*Id.* at 21.) And finally, Plaintiffs allege that "the complaint [has] questioned the veracity and legal efficacy of the documents supplied by all Defendants, including Orlans." (*Id.*)

Despite these allegations, Plaintiffs have not strung together an argument that supports a cognizable claim. As Orlans points out, Plaintiffs do not allege a violation of any statute or common law.

The Court does acknowledge that part of the Michigan Consumer Protection Act, Michigan Compiled Law § 445.903, addresses "[u]nfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce," but Plaintiffs have done nothing to show or explain that Orlans violated this statute or that even Orlans is subject to this statute.

The Court therefore dismisses without prejudice this claim against Orlans.

## III.   Conclusion

For the above-stated reasons, the Court DENIES Plaintiffs' motion to remand and GRANTS Orlans's motion to dismiss.

SO ORDERED.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated: August 10, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2011, by electronic and/or ordinary mail.

      s/Carol A. Hemeyer
      Case Manager